UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JARRETT #235621,

                Plaintiff,

vs.                              Case No. 2:13-cv-14516
                              HON. GERSHWIN A. DRAIN

DOUGLAS SMITH, *et al*.,

                Defendants.

_____

## <u>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#16] AND DISMISSING ACTION</u>

### I.    INTRODUCTION

On October 28, 2013, Plaintiff Michael Jarrett (hereinafter "Jarett"), a state inmate proceeding *pro se*, filed the instant 42 U.S.C. § 1983 action claiming Defendants, Douglas Smith and Matthew Harpst (hereinafter "Smith" and "Harpst"), violated his First Amendment rights by retaliating against him for past litigation and for filing grievances.

Presently before the Court is Defendants' Motion for Summary Judgment, filed on January 16, 2014. Plaintiff filed his Response on January 29, 2014. The Court has ordered submission and determination of Defendants' present motion without oral argument. *See* Dkt. No. 20. For the reasons that follow, the Court grants Defendants' Motion for Summary Judgment.

- 1 -

## II.     FACTUAL BACKGROUND

Jarrett is currently confined in the Michigan Department of Corrections ("MDOC") at the Richard A. Hanlon Correctional Facility (MTU), Ionia, Michigan. At the time giving rise to the allegations in his Complaint, Jarrett was incarcerated at the Gus Harrison Correctional Facility (ARF), Adrian, Michigan.

On November 7, 2012, Jarrett requested a prison work assignment as a unit porter during his initial classification screening at ARF. *See* Pl.'s Resp. at ¶6. On May 13, 2013, Jarrett was reclassified and removed to a yard crew assignment by ARF Corrections Program Coordinator Harpst at the request of Smith. *Id*. at ¶18, 23. A prisoner is assigned a job through classification and reclassification pursuant to MDOC policy. Jarrett alleges that he had a job already and he had no desire to change his job or to be reclassified for financial advancement or any other reasons. *Id*. at ¶18; *see also* Pl.'s Aff. Ex. N at ¶2. When Jarrett reported to the assignment the first day, he spoke to Officer Thompson and told him that there had to be a mistake because he had no desire to change his work assignment. Pl.'s Resp. at ¶18. Jarrett contends that after being informed that Harpst had removed him at the request of Smith, he attempted to speak to Smith at breakfast on May 15, 2013, but Smith refused to have a conversation with him. *Id*. at ¶23. On May 16, 2013, Jarrett talked to Smith and Smith explained that he had placed Jarrett on yard crew because Jarrett "needed to do some real work." *Id*. Jarrett alleges that the Defendants moved him in retaliation for filing grievances and initiating a lawsuit in 2013.

Conversely, the Defendants claim that Jarrett volunteered for the work assignment and requested that it be permanent so he could obtain certain benefits from the assignment. *See* Defs.' Br. in Supp. of Mot. for Summ. J. at 13. The Defendants further contend that Jarrett was one of four inmates to volunteer and he said he wanted to work outside since the weather was nice. *See* Smith Aff. Ex. H at ¶6-7 and Harpst Aff. Ex. G at ¶7. The Defendants also argue that Jarrett did not lose any work time and he received a pay increase from $0.37 a day as a unit porter to $0.84 on the yard crew. *See* Harpst Aff. Ex. G at ¶8.

Jarrett filed a grievance on May 17, 2013 (ARF-13-05-1547-17z, *see* Pl.'s Aff. Ex. D) and the grievance was denied for lack of merit. *See* Pl.'s Aff. Ex. D. Jarrett also filed another grievance on May

- 2 -

14, 2013 (ARF-13-05-1518-28i, *see* Pl.'s Aff. Ex. H). This grievance was rejected for failure to talk to the staff person most directly involved with this issue. *See* Pl.'s Ex. H. Jarrett appealed both the Step I grievance responses to Step II and both the grievances were denied at Step II. *See* Pl.'s Ex. E, I. Jarrett filed Step III appeals for both grievances. *See* Pl.'s Ex. F, J. He claims that he filed the Step III appeals before he received the Step II responses because the due date for the Step II responses had already passed. *Id*; *see also* Pl.'s Resp. at ¶25. His Step III grievances were denied on October 31, 2013. *See* Pl.'s Ex. J.

Jarrett also contacted the Office of the Legislative Corrections Ombudsman on July 18, 2013. He got a response from the Ombudsman on September 18, 2013 in which Tom Hirsbrunner, an Analyst in the Ombudsman, said he had raised the concerns with the administration at Jarrett's facility. *See* Pl.'s Ex. L.

## III.    LAW & ANALYSIS

### A.  Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Ky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there

be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ont., Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act requires Plaintiff to exhaust his administrative remedies prior to bringing this action. *See* 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under §1983 … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Proper exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001); *Woodford v. Ngo*, 548 U.S. 81 (2006). To meet the exhaustion requirement, Plaintiff must demonstrate compliance with the MDOC's grievance policies, including its deadlines and procedural rules. *Woodford*, 548 U.S. at 90. Thus, examination of the MDOC's grievance policies, set forth in MDOC Policy Directive 03.02.130, *Prisoner/Parolee Grievances*, is required to determine whether Plaintiff's claims are exhausted. Failure to exhaust remedies under the PLRA is an affirmative defense, and, accordingly, defendants in a prisoner's suit bear the burden of proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

### 1. MDOC Grievance Policy

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. An inmate must first

- 4 -

attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id*. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id*. at ¶R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id*. at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id*. at ¶¶ T, DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id*. at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id*. "The total grievance process from the point of filling a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II. An extension for a Step I or II response shall not exceed 15 business days unless the grievance falls within the jurisdiction of the Internal Affairs Division." *Id*. at ¶ S.

In the instant case, Defendants have established that Plaintiff failed to exhaust his MDOC grievance remedies. However, even if Plaintiff had properly exhausted his administrative remedies, he cannot demonstrate a question of material fact exists on his retaliation claim, therefore this matter must be dismissed.

- 5 -

### 2. Grievances

#### a. Grievances ARF-13-05-1547-17z and ARF-13-05-1518-28i

Defendants first argue that Jarrett failed to exhaust the MDOC's grievance process because he filed his Complaint on October 28, 2013 when two of his grievances, ARF-13-05-1547-17z and ARF-13-05-1518-28i, were still pending. Specifically, Plaintiff commenced the present action before receiving a response to his Step III grievances.

In *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004), the court held that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Id.* The *Boyd* court refused "to interpret the PLRA 'so narrowly as to permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" *Id.* at 996. The court stated in *Thompson v. Koneny* that "under most circumstances, commencing suit before receiving a Step III response would mandate dismissal. However, the Sixth Circuit recently adopted the Fifth, Seventh, Eighth and Tenth Circuits' position in holding that a prisoner is deemed to have exhausted his administrative remedies if prison officials fail to respond to his grievances in a timely fashion." *Thompson v. Koneny*, No. 04-40257, 2005 WL 1378832 (E.D. Mich. May 4, 2005) (citing *Boyd*, 380 F.3d at 996); *see also Powe v. Enniss*, 177 F.3d 393, 394 (5th Cir. 1999) (concluding that "a prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.").

In the present case, Jarrett filed his Step I grievance on May 16, 2013. *See* Pl.'s Ex. D. The MDOC's grievance process must be completed within 120 calendar days unless an extension has been approved in writing at Step I or II. Here, there were no extensions, thus Jarrett should have received his Step III response 120 days after May 16, 2013, or no later than September 11, 2013. But Jarrett did not get his Step III response until October 31, 2013, or four days after he filed the present action. There are 50 days between September 11, 2013 and October 31, 2013. As such, the MDOC's response time cannot be deemed "timely" under *Boyd*. Therefore, although Plaintiff overlapped his administrative and judicial remedies, his case cannot be dismissed on this basis.

- 6 -

The Defendants next argue that the rejection of Jarrett's ARF-13-05-1518-28i Step I grievance was upheld at Steps II and III because he did not follow the proper procedure by initially attempting to resolve the grievance orally with Harpst. Therefore, Defendants maintain Jarrett did not properly exhaust his administrative remedies as required by *Woodford*, *supra*. The Defendants rely on *Burnett v. Howard*, in which the court held that "as long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." No. 2:09-cv-37, 2010 U.S. Dist. LEXIS 30499, * 3 (W.D. Mich. Mar. 30, 2010).

The Court agrees with the Defendants that Plaintiff failed to complete the grievance process in accordance with the MDOC's grievance policy. Additionally, even though the Defendants fail to raise a similar argument with respect to Jarrett's ARF-13-05-1547-17z grievance, Jarrett likewise did not properly exhaust his administrative remedies with this grievance. This ARF-13-05-1547-17z grievance was denied for not following the proper procedure. As such, based on *Burnett*, "a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Id*.

### b.  Grievance ARF-13-04-1341-25z

The Defendants last argue that the Grievance ARF-13-04-1341-25z does not pertain to the allegations in Jarrett's Complaint. This particular grievance deals with the visitation restriction with which Jarrett was unsatisfied. This grievance has nothing to do with his allegations here; therefore Plaintiff cannot rely on this grievance to establish proper exhaustion of his administrative remedies. While the Court finds that Plaintiff has indeed failed to exhaust his administrative remedies, even if Plaintiff had properly exhausted his administrative remedies, his claim would still fail because he cannot demonstrate a question of fact exists on his First Amendment claim.

### C.  Retaliation

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in

part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The plaintiff has the burden of proof on all three elements. *See Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

### 1. Protected Conduct

"The first element plaintiff must establish for his retaliation claim is that he was engaged in conduct protected by the First Amendment." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). Frivolous grievances are not protected conduct. *Id*.

Jarrett claims that the Defendants retaliated against him by changing his work assignment from part-time Housing Unit porter to a full-time yard crew assignment because of past litigation and filing grievances. Plaintiff satisfies the first requirement of *Thaddeus-X* because the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subject to retaliation. *Thaddeus-X*, 175 F.3d at 394; *see also Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).

### 2. Adverse Action

Plaintiff must also show that there was an adverse action taken against him and that the adverse action was causally connected to the filing of the grievance and lawsuit. An adverse action "is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 675 (7th Cir. 1982)). "*Thaddeus-X* requires that an alleged act of retaliation be truly 'adverse,' and explains that 'certain threats or deprivations are so de minimis,' 'inconsequential,' or 'trivial' that they cannot sustain a First Amendment retaliation claim." *Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002). "Routine inconveniences of prison life do not constitute adverse action." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). A prisoner has no constitutional right to prison employment or a particular prison job. *Jewell v. Leroux*, 20 F. App'x. 375 (6th Cir. 2001), *quoting Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989).

Jarrett fails to prove that the job re-assignment was an adverse action taken against him. Re-assignment to a different job does not rise to the level of deterring a person of ordinary firmness from the exercise of the right at stake. The concept of First Amendment retaliation was fashioned by the Supreme Court and the Sixth Circuit to assure prisoners' access to the courts. To allow dissatisfaction over a prison

work re-assignment to qualify as an adverse action sufficient to support a retaliation claim is not supported by Sixth Circuit precedent. *See Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) (concluding that a prison transfer which resulted in the loss of a job was an adverse action because the plaintiff could no longer pay his attorney, therefore implicating his ability to access the courts). In fact, Jarrett does not argue that the re-assignment resulted in any lost work time or a decrease in pay due to the re-assignment.

### 3. Motivation/Causation

The third element of a First Amendment retaliation claim requires the plaintiff to prove a causal connection between the protected conduct and the adverse action. The Sixth Circuit has interpreted this inquiry to mean that a motivating factor is "essentially but-for cause – without which the action being challenged simply would not have been taken." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Thaddeus-X*, 175 F.3d at 399. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment. *Id*. When assessing motive in the context of a summary judgment motion, bare allegations of malice do not suffice to establish a constitutional claim. *Id*.

In the present case, Plaintiff has failed to show that his grievances and lawsuits were substantial factors motivating the decision to reassign him to a different position. The Defendants maintain that they were "unaware of any grievances or complaints filed by Jarrett." (Smith Aff. Ex. H at ¶ 5; Harpst Aff. Ex. G at ¶ 5). Additionally, the Defendants argue that "Jarrett was placed on the yard crew by Harpst not only because his name appeared on the list of volunteers, but because the reassignment was financially advantageous to Jarret." (Harpst Aff. Ex. G at ¶ 9). Jarrett offers no evidence demonstrating that the Defendants had any knowledge of his 2013 lawsuit, which arose from events that occurred at a different MDOC facility.

On the present record, no reasonable trier of fact could find a causal connection between Plaintiff's lawsuit and past grievances and Defendants' actions. Further, the Defendants have shown that they would have taken the same actions if Plaintiff had not filed previous grievances and a lawsuit in 2013. Therefore, Defendants are entitled to judgment in their favor as a matter of law on Plaintiff's claim of retaliation.

### D.  Qualified Immunity

Defendants also argue that they are entitled to qualified immunity because Plaintiff has failed to identify the violation of a constitutional right, as well as failed to demonstrate that their actions were not authorized under the law.

Government officials are generally immune from liability and civil damages insofar as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person should have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity recognizes that "reasonable mistakes can be made," and protects "all but the plainly incompetent or those who knowingly violate the law." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).

Whether qualified immunity applies is a legal question. *See Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). This Court must undertake a two-part inquiry: (1) whether the plaintiff has alleged the deprivation of a constitutional right, and (2) whether that right was clearly established at the time of the Defendants' alleged misconduct. *Pearson*, 555 U.S. at 232. Here, the Court finds that Defendants are entitled to qualified immunity because Plaintiff has failed to demonstrate the deprivation of his First Amendment rights.

**IV.     CONCLUSION**

Because Jarrett fails to demonstrate proper exhaustion of administrative remedies, as well as fails to establish a genuine issue of any material fact as to his retaliation claim, Defendants' Motion for Summary Judgment [#16] is GRANTED. This cause of action is dismissed.

SO ORDERED.


Dated:  <u>March 28, 2014</u>                                    <u>/s/Gershwin A Drain         </u>
                                                          United States District Judge